PHILIP W. LAWRENCE
*vs.*
MARY H. CUNNINGHAM (FOOTER)

Sagadahoc.   Opinion, February 27, 1964

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   MARDEN, J., did not sit.

*Charles T. Small,* for Plaintiff.

*John P. Carey,* for Defendant.

WEBBER, J.   The plaintiff contractor alleges full performance of a written agreement and demands the contract price from defendant owner.   The defendant asserts that the plaintiff has not performed the contract and did not enter into the agreement or undertake performance in good faith.   The defendant by counter claim seeks recovery of the sums advanced by her under the contract, setting forth that the services rendered and materials furnished by the plaintiff are without value.

The matter was heard and decided below by a single justice, jury waived.   He was aided by a view.   He found that

the plaintiff had substantially performed the contract according to its terms, but made allowance to the defendant for additional and corrective work required in the sum of $343.25 against a total contract price of $3,000. His findings accurately cited *Water Co.* v. *Village Corporation,* 102 Me. 323, 66 A. 714, in support of the rendition of a properly reduced judgment in a "substantial performance" case. See also *Rockland Poultry Co.* v̇. *Anderson,* 148 Me. 211, 216, 91 A. (2nd) 478, 480. He gave the defendant proper credit for payment of $600 on account. Defendant appeals.

The situation is somewhat unusual in two respects. The parties were bargaining for the repair of an old and dilapidated house which had been condemned by municipal authorities. Recognizing that the value of the premises was such that the cost of a first class job would be prohibitive, the parties by contract fixed the standard of workmanship to be required. Although nearly all of the work done by the plaintiff is the subject of complaint, the parties agree that their disagreement over the contract requirements pertaining to the repair of chimneys presents the most serious monetary issue between them.

We quote the following excerpts from the contract:

"2. It is agreed that there are to be *no major structural changes* in the building ... (exceptions stated—not pertinent), but it is especially understood that there will be *no alterations* of other existing doors and windows, walls, floors, or roof *or chimney* with the exception of the removal of half of the so-called ell on the west side of the building. * * *

"5. The Repairer is to 'top' the chimney on the ell and 'cap' the other two chimneys with the understanding that 'capping' means to start at the top and work down and replace as much brick as is necessary to make the chimney functional and structural and souhd sound (sic), whereas 'top-

ping' means to remove the entire chimney, at least one foot below the wood structure of the roof. * * *

"12.   It is understood and agreed between the parties that these premises were condemned by the City of Bath, that the present condition is dilapidated and that the premises could not possibly be restored change its shape (sic) without the expenditure of many times the contract price and that consequently the Owner is not to exact of the Repairer a standard of workmanship out of proportion to the fact that it is the purpose of this contract to make the premises *useable,* but not to make premises correspond to the workmanship that would be in the average new or repaired state."   (Emphasis ours.)

It may be noted that during negotiations looking to a possible settlement of the dispute the plaintiff undertook to do some corrective work in the premises but was prevented by the defendant.

In his findings the justice below summarized the result in these terms:   "It cannot be gainsaid that the result of plaintiff's efforts left a dwelling which the defendant, counsel nor the court would choose to occupy."   The court construed the word "useable" as intended by the parties in their agreement to mean:

"1.   Acceptable to the Bath 'Code.'   It is not clear whether the Code referred to is Building Code or Fire Code, but it is some Code wherein minimal requirements of housing for occupancy are established.

"2.   Acceptable for occupancy by persons who could be attracted to the premises, in the light of the structural attributes and living facilities which it offers, both with regard to the work done by plaintiff and with regard to those structural features of the premises with which plaintiff had nothing to do."

We think that this meaning assigned to the word "use-able" as employed by the parties accords with the purpose and intent of the entire contract as construed in the light of the surrounding evidence. The findings further stated:

> "At best this property would attract only tenants either of very modest means or those seeking shelter under rather urgent necessity. It can be classed only as 'cheap' rental property. From available tenants the most of the items of work of which defendant complains would in our opinion draw no criticism."

In summation the justice below concluded that, except for certain items as to which he gave credit in reduction of the judgment, the defendant received the quality of workmanship for which she specifically bargained.

With particular reference to the chimney work the court rejected the contention of the defendant that she was entitled to three fully functioning chimneys even though such construction would have required the ripping out and rebuilding of walls and partitions and the complete rebuilding of the chimneys from the ground up. The court quite properly held that the plaintiff's obligation was expressly limited by contract, but that the *portion* of the chimney for which the plaintiff undertook responsibility must in its repaired state meet code standards. In short, if after such repair, *other portions* of the chimney, not made the responsibility of the plaintiff by contract, were in such condition as to prevent the chimney from being fully functional, the plaintiff could not be held accountable for the deficiency. We have emphasized above certain words and phrases employed in the contract which lend support to the interpretation of the justice below.

Although, as above noted, there were some variances from and deficiencies in contract performance for which credit was given in the assessment of damages, the court expressly

found no lack of good faith on the part of the plaintiff. Under these circumstances an award for "substantial performance" was proper. *Thurston* v. *Nutter,* 125 Me. 411, 418, 134 A. 506, 509.

There being no manifest error in the interpretation of the contract or the application of governing principles of law, the issues remaining are factual. The evidence was conflicting. The justice below saw and heard the witnesses and had the benefit of a view. We see no indication that his findings were clearly erroneous.

*Appeal denied.*