**APPLEWOOD LANDSCAPE &**
**NURSERY CO., INC., et al.,**
**Plaintiffs, Appellees,**

v.

**Wayne B. HOLLINGSWORTH, et al.,**
**Defendants, Appellants.**

No. 88–1884.

United States Court of Appeals,
First Circuit.

Heard May 2, 1989.
Decided Sept. 13, 1989.

Pamela N. Joseph, Boston, Mass., for appellants.

Peter B. Bickerman, with whom Roger J. Katz and Lipman and Katz, P.A., Augusta, Me., were on brief, for appellee Applewood Landscape and Nursery Co., Inc.

Mark E. Susi, Gardiner, Me., for appellees Warren Const. Co. and Harold Warren.

Before BREYER and TORRUELLA, Circuit Judges, and RE,* Judge.

BREYER, Circuit Judge.

This appeal arises out of simple breach of contract actions. Appellant Wayne Hollingsworth, a lawyer, built an expensive house for himself and his family on the shore of a lake in Maine. He decided to act as his own general contractor, at least in respect to landscaping. Instead of using readily available printed form contracts, he made oral contracts with the appellees, the Warren Construction Co., and the Applewood Landscape and Nursery Co. He hired Warren initially to help build his driveway and his airplane landing pad; later, in the fall of 1984, he asked Warren to build various garden walls that would hold back banks of soil, using old Canadian railway ties that Hollingsworth had obtained. He hired Applewood to install plants, trees and a lawn, in June and July 1985. He agreed with each appellee to pay an hourly billing rate plus materials.

Warren and Applewood performed the work requested, but Hollingsworth refused to pay each of them about $15,000 of the amounts they had billed. Hollingsworth did not deny that the approximately $15,000, in each instance, represented hours worked or the cost of materials; but, in his view, the work that each company performed was defective. The result was a dispute, a dispute that an arbitrator who knows about gardens might have resolved fairly quickly, but a dispute that in the form of court litigation, led to suits, removals, countersuits, claims, counterclaims, and third party claims, until, eventually, all the matters were consolidated and the parties went to trial in the Maine federal district court. The district judge, sitting as a trier of fact, found that Hollingsworth had failed to live up to his contracts; he awarded Warren the $14,662.15 it had claimed and Applewood the $15,335.53 it had claimed; and he denied Mr. and Mrs. Hollingsworths' claims for damages (claimed to

be $100,000) as a result of defective work. Hollingsworth now appeals.

■ First, Hollingsworth argues that the district court's statements of its findings of fact and conclusions of law are legally inadequate. *See* Fed.R.Civ.P. 52(a) ("In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon ...."). It is well established, however, that "findings are sufficient if they permit a clear understanding of the basis for the decision," *Tri-Tron International v. Velto*, 525 F.2d 432, 435-36 (9th Cir. 1975). Since "the purpose of [this clause in] Fed.R.Civ.P. 52(a) is to assist the appellate court by affording it a clear understanding of the ground or basis of the decision below," *Boston and Maine Corp. v. First National Bank of Boston*, 618 F.2d 137, 143 (1st Cir.1980), the "judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." Fed.R.Civ.P. 52(a), advisory committee's note to 1946 Amendment. *See also Kelley v. Everglades Drainage District*, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943) (per curiam) (findings need only be "sufficient to indicate the factual basis for the ultimate conclusion"); *Feazell v. Tropicana Products, Inc.*, 819 F.2d 1036, 1042 (11th Cir.1987) (Rule 52(a) "does not require a finding on every contention raised by the parties"); *Morgan v. Kerrigan*, 509 F.2d 580, 588 n. 14 (1st Cir.1974) (the court "does not have to make findings on every proposition put to it by the parties"), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); 9 Wright & Miller, Federal Practice and Procedure: Civil § 2579 at 710-11 (1971 & Supp.1988) (The trial court should "include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.... [But the] court need only make brief, definite and pertinent findings and conclusions....").

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

As long as such "brief" and "pertinent" findings are made and "the record as a whole supports the district court's findings of fact," we can affirm its result. *Morgan,* 509 F.2d at 588 n. 14. *Accord Unt v. Aerospace Corp.,* 765 F.2d 1440, 1444 (9th Cir.1985) (even where district court's findings were "not well done [because they] consist mainly of mere conclusions, preceded only by an unhelpful chronology of events [and] do not articulate specific factual bases for the trial court's boilerplate determination that [defendant's] actions were justified by 'legitimate business reasons,'" there was no Rule 52(a) defect because "despite the factual shortcomings, the basis for the court's decision is clear [and the] record gives substantial and unequivocal support for the ultimate conclusion"); *Infusaid Corp. v. Intermedics Infusaid, Inc.,* 756 F.2d 1, 2 (1st Cir.1985) (suggesting in dicta that appellate court may rely on "the record before us" to satisfy Rule 52(a)); *Grover Hill Grain Co. v. Baughman–Oster, Inc.,* 728 F.2d 784, 793 (6th Cir.1984) ("Findings are to be liberally construed in support of a judgment ... the failure to even make an express finding of a particular fact does not require reversal if a complete understanding of the issues may be had without separate findings.") (citing cases); *Swanson v. Levy,* 509 F.2d 859, 861 (9th Cir.1975) ("failure to make the necessary findings does not require remand if a complete understanding of the issues may be had ... from the record on appeal") (citation omitted). Rule 52(a) expressly permits findings of fact to be made orally as well as in writing. Having read both the transcript of the trial and the judge's oral opinion, we believe the findings here are more than adequate.

The basic question in the Warren case is why the garden walls (walls separating the driveway and the landing ramp from the raised garden terrain) began to buckle. Hollingsworth testified that Warren should have installed them at a slant or a "batter"; that is to say, he should have rested each succeeding railroad tie an inch or so back from the front of the tie beneath it, thereby producing a stronger wall better able to hold back the dirt behind it; and, he should

have placed more "deadmen" in the walls ("deadmen" being ties placed at a ninety degree angle to the wall, so that, like nails, they hold the wall to the soil stacked up directly in back of it). Warren testified, however, that "Mr. Hollingsworth wanted the wall straight upon and down. He didn't want it tipped." And, Warren added that Mr. Hollingsworth (to use the words of counsel's questions) "told" him, "instructed" him, "not to build any walls with batter [i.e. with a receding slant]". In addition, Bryan Walker, who was hired by Hollingsworth to draw up a basic landscaping plan, testified that Hollingsworth "wanted to see the wall built vertically with a straight face, because he much preferred the appearance of it" and he "was adamant in his insistence upon building that wall vertically" despite the fact that Walker "described to him the problems that he would undoubtedly run into if he did that." Warren, and others, also denied that the number of deadmen was insufficient.

The district court simply found that Warren had "built" the walls "in accord with the instructions that he had received from the owner," which is what he had contracted to do. In context, this written finding adequately informs the reader that the court believed Warren that Hollingsworth had asked to have the walls installed vertically and that the number of "deadmen" was not seriously inadequate. We note that the court also said that "some of the walls are defective at this point in time and require correction." That is, some of the vertical walls were buckling to some extent. But that statement is perfectly consistent with the court's findings, for Hollingsworth *instructed* Warren to build the walls in a way—vertically, not slanted—that Hollingsworth's own landscape planner had told him would risk problems later.

The question in the Applewood case was why so many of the trees and shrubs that Applewood bought were of poor quality and why the lawn that he laid, in large part, had to be replaced later by another company. Hollingsworth said that Applewood's work was simply shoddy. Apple-

wood's owner and manager, David Leyland, however, said that Hollingsworth himself was the problem, for Hollingsworth, in early June, began to insist that Applewood complete its work by July 5, an impossible schedule, despite Hollingsworth's knowledge of the risks such a schedule would create for product quality. Leyland, and his co-owner, Ernest Glabau, said that they told Hollingsworth that it would be difficult to find decent quality shrubs and trees so late in the spring (and they offered to replace any poor ones); they also said that the quality of the sod (which Hollingsworth bought separately) was partly to blame for the lawn, as was a last minute severe rain storm, and an inability, given the time schedule, to complete all ground grading before beginning to install the sod.

The district court found that "Applewood was not aware of the need to conclude [its landscaping] ... program by the 5th of July or the 4th of July until some time in mid-June; that then at that time a serious effort was made to accomplish what was desired, or indeed what was demanded, that Applewood proceeded to do the work as best it could under the circumstances." The district court added that the new company charged about $21,000; that Hollingsworth's sod was not likely of "poor quality;" but the court reiterated that Applewood "did the work that was required of them under the contract." It said they "laid the sod that was required." In the circumstances, these findings mean that Applewood promised Hollingsworth it would make reasonable efforts to do the work he asked Applewood to do; that Hollingsworth promised to pay hourly wages and materials costs for this work; and that Applewood did what it promised. If the result was unsatisfactory, that is because what Hollingsworth asked entailed risks, not because Applewood failed to do what it said it would. Reading the district court's findings against the background of the record, we have no difficulty concluding that they are sufficiently specific.

Second, Hollingsworth argues that the evidence does not support the findings. The evidence we have mentioned, however, when added to other evidence in the record, offers more than sufficient support. The district court, for example, pointed out that Hollingsworth sent Warren a $13,000 payment for past work in the spring of 1985, after Warren had built straight, vertical walls, a fact that suggests Warren was building what Hollingsworth wanted. As the court noted, "one is not likely to part with $13,000 at a time when there is a hot dispute going on." (Of course, partial payment for defective work does not waive objections to performance that violates the terms of the contract, see *Hattin v. Chase*, 88 Me. 237, 33 A. 989 (1895), but the payment, in context, can be evidence that the work done did in fact comply with the terms of the contract.) Moreover, Hollingsworth himself cast considerable doubt upon his own veracity when he testified that he had "paid" Warren "another $5000" (out of the approximately $15,000 in dispute), for neither a search of his extensive disbursement records, nor the recollection of his wife (who handled the disbursements), could produce any evidence that he had made any such payment. (And, the district court, in what is implicitly a finding about credibility, said "frankly I find that it was not made.") A court, believing Warren's testimony, and disbelieving other, conflicting testimony, could readily reach a conclusion in Warren's favor.

Similarly, a court might reasonably believe the testimony of Hollingsworth's landscape planner that, for example, he told Hollingsworth that "it was quite impractical" to finish the landscape work by "July 4 or July 5," and that "it was unreasonable to expect anybody to complete the work by that time," given such problems as Hollingsworth's continually making changes and expecting landscape people to work successfully with other "construction going on practically all the time." If so, that court might reasonably conclude that Applewood had done what it promised, and worked reasonably well under the circumstances; and that Hollingsworth (or the weather, or both) was responsible for any poor results. In short, these were credibility determinations vested in the trial court.

*See Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985); *Scarpa v. Murphy*, 806 F.2d 326, 328 (1st Cir.1986).

Third, Hollingsworth says that the district court made a mistake about the law, for it insisted that he prove that the contractors' work was deficient, rather than requiring them to prove their work was adequate. If Hollingsworth means that Warren or Applewood failed to prove that the *results* of their work were adequate, the short, conclusive answer to his claim is that neither Warren nor Applewood certified the quality of their results, nor could they, given Hollingsworth's predilections for short deadlines and straight walls; rather, they simply promised to do the work that Hollingsworth asked them to do, charging for time and materials. Hollingsworth more likely means that Warren or Applewood failed to prove that their efforts met standards of reasonable competence. But, we believe that the facts that they are in the landscaping business, that they completed some work successfully, that they worked the time for which they billed, that photographs show several walls that seem adequate, that they themselves testified (explicitly or implicitly) that their work was adequate, that Hollingsworth made a large payment to Warren after much of the work was completed, that independent witnesses offered some support, and that any failure in results flowed from Hollingsworth or other causes beyond the contractors' control (such as the weather), more than justified the court's finding that the workers did their work reasonably well during the hours that they put in (implicit in the court's finding that both firms "did the work that was required of them under the contract").

■ Hollingsworth points out that the court, at the beginning of the trial, said that Applewood did not have the initial "burden" of showing that its work was "properly done." The court said Applewood must show that it had done its work and not been paid, and that it was then Hollingsworth's burden to show any defect in the work. Hollingsworth made no objection to this statement at the time, and we think the point was waived. *See United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982). In any event, Hollingsworth has not shown the court's statement to be legally incorrect. As just explained, the district court's comments seem to apply to the quality of the results; the appellees were not required to prove high quality results given the trial court's finding that any poor results were Hollingsworth's (or the weather's) fault. And, the evidence was more than adequate to show that the appellees put in the time they claimed, and worked as they had promised to do. This evidence is sufficient to support a verdict in the appellees' favor. *See United States v. Premier Contractors, Inc.*, 283 F.Supp. 343, 348 (D.Me.1968) (under Maine law, contractor may prevail by showing that he accomplished "substantial performance of his own obligations under the contract"); *F.A. Gray, Inc. v. Weiss*, 519 A.2d 716 (Me.1986) (party may recover contract price upon showing of substantial performance); *Astor v. Boulos Co.*, 451 A.2d 903 (Me. 1982) (substantial performance doctrine applies to contracts for services); *Lawrence v. Cunningham*, 160 Me. 89, 197 A.2d 767 (1964) (finding substantial performance, despite showing of some variances from contract terms). *Cf. Precon, Inc. v. JRS Realty Trust*, 47 B.R. 432, 435–38 (D.Me.1985) (once contractor demonstrates substantial performance he is entitled to contract price, less damages due to serious defects in his performance; but contractor's recovery is not reduced on account of defects resulting from the land owner's conduct, and the land owner bears the burden of proving damages due to defects); *Skillings v. Norris*, 50 Me. 72, 73 (1862) (owner bears burden of proving defects).

■ Regardless, the appellees put on evidence (in rebuttal) to show the quality of their work, and there is no indication that the court's contract decision at the end of the trial turned on "burden of proof" rules rather than on the weight of the evidence in the record. Hence if the description of the burden of production to which Hollingsworth refers was a misstatement of the law, it was harmless error.

We add that the record does suggest that both Warren and Applewood conceded problems in the results. Warren offered, at one point, to cut $3,000 from the total outstanding debt of $14,662.15; Applewood said he would replace some of the trees. And Hollingsworth put on some evidence of the problems with the results of the work. But the district court could reasonably conclude that any failings in the quality of the work performed, insofar as Warren or Applewood were at fault, were too minor to amount to a breach of the work contracts or to negate the appellees' demonstrations of substantial performance, in which case it was still up to Hollingsworth to show how defective the work was, whether the defects amounted to breaches of the contracts, and how much harm the defects caused him. Insofar as the district court used "burden of proof" language to refer to this kind of matter, it was correct. *See Precon*, 47 B.R. at 438 (owner bore burden of proving damages from contractor's failure to perform transportation under contract).

■ Fourth, Hollingsworth argues that the district court improperly refused to permit him to present the testimony of David Struck, the owner of a landscaping firm, who had observed the walls and would have testified as an expert that they were "improperly installed and ... that the cost of repair of these walls is $48,000." Hollingsworth, while presenting this witness to testify on a key, hotly disputed point, had not designated him as an expert witness (or as any kind of witness) in accordance with a pretrial order requiring such designation by October 1, 1987, nor did he list Struck on the witness list provided opposing counsel a week or two before trial, nor did he try to add Struck to that list. Struck's appearance, suddenly on the last day of trial, surprised opposing counsel and surprised the court. Opposing counsel had had no opportunity to submit interrogatories or to depose Struck; and the court could not understand why Hollingsworth had not introduced Struck during his case in chief, rather than saving him for rebuttal. Hollingsworth was unable to offer any response to these concerns.

The power to impose sanctions for violations of discovery rules and pretrial orders lies in the district court, not this court. *See* Fed.R.Civ.P. 16; Fed.R.Civ.P. 37(b)(2). The Federal Rules specifically authorize, as a sanction for such violations, an order "prohibiting" the "disobedient party" from "introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B). We will reverse such a sanction only for abuse of discretion. *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir.1985). Given (i) the surprise involved, (ii) the impracticality of stopping the trial (being conducted before a judge from another jurisdiction sitting by designation and as trier of fact) just before its close to permit time for appellees' counsel to conduct discovery of Struck and prepare responses (possibly including new witnesses of their own), (iii) what, from the record's silence as to reasons and our inability to perceive any, seems like bad faith on Hollingsworth's part, *see Lirette v. Popich Brothers Water Transport, Inc.*, 660 F.2d 142, 145 (5th Cir.1981) (counsel's inability to explain failure to comply with pretrial order implies bad faith), and (iv) the district court's need to enforce compliance with its discovery orders, we can find no abuse of the district court's exercise of its lawful sanctioning powers.

■ Both Warren and Applewood argue that this appeal is frivolous and ask for double costs and attorney's fees. *See* 28 U.S.C. § 1912 (authorizing award of "just damages for [prevailing party's] delay, and single or double costs"); Fed.R.App.P. 38 (authorizing award of "just damages and single or double costs" if appeal is "frivolous"); *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 471–73 (1st Cir.1985); *Commonwealth Electric Co. v. Woods Hole, Martha's Vineyard and Nantucket Steamship Authority*, 754 F.2d 46, 49 (1st Cir.1985). "An appeal is frivolous when the result is obvious, or the arguments are 'wholly without merit.'" *Natasha*, 763 F.2d at 472 (quoting *NLRB v. Catalina Yachts*, 679 F.2d 180, 182 (9th Cir.1982) (citations omitted)). The present dispute is a case of the sort we described in *Natasha*. Warren and Applewood have sued for payment under a contract; the amounts at issue are fairly small; litigation

costs are high; "the expense of ... this suit is likely to amount to a large share of [their] damage recovery." *Natasha*, 763 F.2d at 472. In this situation, failure to obtain the costs of litigation works a particular hardship upon a successful plaintiff. If, at the same time, the defendant's appeal is obviously futile or wholly without merit, we are entitled to exercise our discretion to award costs and damages. *Cf. Chongris v. Board of Appeals of the Town of Andover*, 811 F.2d 36, 45–46 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (declining to exercise such discretion). We therefore award "double costs" and "just damages" both to Warren and to Applewood.

We note in respect to "just damages" that the Advisory Committee on Appellate Rules has stated that "damages are awarded by the court in its discretion," and, "in the case of a frivolous appeal as a matter of justice to the appellee and as a penalty against the appellant." Fed.R.App.P. 38 advisory committee's note. Moreover, 28 U.S.C. § 1912 says that a court of appeals "in its discretion may adjudge to the prevailing party just damages for his delay." In the case before us, we find that the "just" measure of damages is the appellee's attorney's fees, as we have calculated them, for the appeal of this action.

We reach this conclusion without meaning to imply that Hollingsworth has acted in any way other than permitted by law; but, that fact does not automatically mean that it is "just" that he should not pay the attorney's fees of the winning parties. *See Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir.1988) ("Appeal as of right does not translate into propriety of appeal"). Nor do we say that Hollingsworth or his counsel necessarily pursued this appeal in "bad faith." *See Coghlan*, 852 F.2d at 808, 813–14 (bad faith need not be shown to award "just damages" under Rule 38); *Natasha*, 763 F.2d at 472 (subjective belief of appellant or its attorneys is not a necessary element of decision to make award of "just damages" under Rule 38 or § 1912). *But see Oglesby v. RCA Corp.*, 752 F.2d 272, 279–80 (7th Cir.1985) (bad faith is a prerequisite to Rule 38 award of damages). The "justice" of awarding damages against

Hollingsworth, in our view, arises out of the following circumstances:

First, the federal courts are not well suited to this kind of case. The powerful, but expensive, discovery devices and other procedural motions available make it difficult for a plaintiff, seeking a relatively small contract recovery, to survive a determined, well-financed opponent willing to use those devices and motions, irrespective of the legal merits of the plaintiff's case. *See Natasha*, 763 F.2d at 471–72 ("just damages" should be used to penalize recalcitrant defendants who use appellate process to "make it uneconomic for the plaintiff to pursue collection of the full amount owed"). Further, appeal to this Court of Appeals necessitates additional time-consuming and expensive effort by the appellee and by this court. *See Natasha*, 763 F.2d at 471 (frivolous appeals contribute to the "general systemic problem of less judicial time to spend on each case ... the more time we spend on frivolous cases, the less time we have for the problems of more serious litigants"); *see also Coghlan*, 852 F.2d at 815 & n. 17 (collecting cases on waste of judicial resources).

Had the parties in the case before us simply hired an arbitrator, particularly one who knew about landscaping, to walk through Hollingsworth's garden, and to listen to the stories of both sides, the dispute would likely have found a quicker, and certainly a cheaper, resolution. Of course, the law in Maine does not require the parties to have hired an arbitrator in this case. And the federal courts are legally open to out-of-state defendants, who, like Hollingsworth, seek removal. Yet, in such circumstances, it seems "unjust" for a winning plaintiff to see his judgment disappear because his opponent brings a meritless appeal; and we believe we can take that fact into account in determining what "damages" are "just." *See Coghlan*, 852 F.2d at 809 (right to appeal does not justify meritless appeal); *State of Wisconsin v. Glick*, 782 F.2d 670, 673–74 (7th Cir.1986) (awarding Rule 38 damages for meritless removal to federal court and appeal of lower court's rejection of removal).

Second, a review of the litigation indicates that Hollingsworth indeed appears to

have used the procedural means available to him to draw out the proceedings. When, for example, Warren sued Hollingsworth, Hollingsworth filed a third party complaint, seeking indemnification from Warren's owner as an individual, and Hollingsworth also brought his own suit against the owners of Warren and Applewood as individuals, even though it was clear that Hollingsworth did business with them as representatives of their respective corporations. Further, Hollingsworth interposed various defenses based on the fact that a trust owned the land on which he built his house; defenses that argue the landscapers should have sued the trusts. We do not say that in doing so, Hollingsworth necessarily violated Fed.R.Civ.P. 11. But, in considering the "justice" of awarding attorney's fees, we believe that the assertion of these countersuits and defenses shows that Hollingsworth's aim was to complicate and drag out, and likely to add to the costs of resolving, a simple dispute about the quality of a garden wall and a lawn. *See Natasha*, 763 F.2d at 471–72 (problem of the recalcitrant defendant).

Third, Hollingsworth's appeal to this court was meritless. Although the *factual* dispute, as tried in the court below, was not particularly one-sided, this appeal is frivolous. Though we had to read the record to determine whether the judge's findings were adequate and whether the evidence supported them, once we did so, given the broad scope of legal power that the law gives to district courts to find facts and to describe those findings, we must conclude that the legal questions, for an appellate court, were "perfunctory." *Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 74 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Much of Hollingsworth's appeal was directed at what are obviously decisions vested firmly in the sound discretion of the district court, including that court's assessments of the facts and the credibility of the witnesses. *See District No. 8, International Ass'n of Machinists and Aerospace Workers v. Clearing*, 807 F.2d 618, 622–23 (7th Cir. 1986) (awarding Rule 38 damages where appellant challenged credibility findings of

trial court in contract dispute); *Scarpa v. Murphy*, 806 F.2d 326, 329 (1st Cir.1986) (awarding Rule 38 damages where appellant challenged credibility findings of trial court); *Condado Home Care Program, Inc. v. Cooperativa de Seguros de Vida*, 775 F.2d 457, 459 (1st Cir.1985) (awarding double costs and attorney's fees where appellant challenged factual ruling committed to agency's discretion); *DeWitt v. Western Pacific Railroad Co.*, 719 F.2d 1448, 1451 (9th Cir.1983) (awarding double costs and attorney's fees where appeal chiefly challenged factual findings of trial court). Hollingsworth should have recognized that he had had his day in court and he had lost before the finder of fact; and that an appeal is not the proper avenue to seek a new decision on the facts of the dispute. *See Coghlan*, 852 F.2d at 808 (damages justified where appeal was taken "lacking plausible argument following a clean disposition of the relevant issues by the district court"); *Simon & Flynn, Inc. v. Time, Inc.*, 513 F.2d 832, 835 (2d Cir.1975) (per curiam) ("Counsel must realize that the decision to appeal should be a considered one, taking into account what the district judge has said, not a knee-jerk reaction to every unfavorable ruling.").

Finally, we believe that insofar as the use of our discretion to award attorney's fees in a case like this one—a meritless appeal—encourages others, in similar circumstances, to turn to less expensive dispute-resolving systems, or even to use standard form contracts (which explicitly allocate the relevant risks) in the first place, the result will likely prove to be substantively fairer outcomes. We do not see how the numerous motions, the pretrial discovery, the removal proceedings, the appeal, or any other of the mechanisms used here, in fact led to a substantively more just result. We concede that this case might not involve egregiously frivolous conduct. *Cf. Coghlan*, 852 F.2d at 813 & n. 12 (collecting cases of absolutely groundless appeals); *Cowdell v. Cambridge Mutual Ins. Co.*, 808 F.2d 160, 163 (1st Cir. 1986) (per curiam) (awarding double costs and attorney's fees against father of deceased son who brought wholly meritless suit against insurance company over inter-

pretation of policy); *In re Continental Investment Corp.*, 642 F.2d 1, 5 (1st Cir.1981) (damages awarded for multiple frivolous appeals). But the very fact that this appellant has presented meritless claims in the guise of close questions means that the appellees and the court have had to spend considerably *more* time pouring through the record to divine the proper outcome. *Cf. Brady v. Chemical Constr. Corp.*, 740 F.2d 195, 202 (2d Cir.1984) (awarding damages where appellant "deploy[ed] a smokescreen" of unfounded arguments).

Since the statute and the rule permit us to award single or double costs and damages that are "just," and for the reasons just stated, we conclude that a "just" award will include, for the proceedings in this court, both double costs and $7,500 attorneys fees, each to Applewood and to Warren.

The judgment of the district court is

*Affirmed.*

Costs and damages are awarded as stated.