In re BWL, INC., Debtor.

Eric L. CIANCHETTE, Kenneth L. Cianchette, A. Earl Brown, and William T. Brown, Appellants,

v.

BANK OF NEW ENGLAND, N.A., Appellee.

No. 90–0104–P.

United States District Court, D. Maine.

Jan. 25, 1991.

John R. Bass, Thompson McNaboe, Portland, Me.

George J. Marcus, David J. Perkins, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for BWL, Inc.

James B. Haines, Jr., Portland, Me., for Bank of N.E.

John H. Fitzsimmons, Comm. Dept. of Labor, Augusta, Me.

## MEMORANDUM OF DECISION AND ORDER AFFIRMING DECISION OF THE BANKRUPTCY COURT AND IMPOSING SANCTIONS ON APPELLANTS AND APPELLANTS' COUNSEL

GENE CARTER, Chief Judge.

This case comes before the Court on appeal from an order of the Bankruptcy Court awarding summary judgment to Bank of New England, N.A. For the reasons discussed below, the order of the Bankruptcy Court will be affirmed. In addition, the Court will grant Appellee's Motion for Sanctions against Appellants and Appellants' counsel pursuant to Federal Rule of Appellate Procedure 38.

## I. FACTS AND PROCEDURAL HISTORY

Eric Cianchette, Kenneth Cianchette, A. Earl Brown, and William Brown (hereinafter Appellants or Maine Partners) were partners in the Armory Hotel Associates along with Allan Jones, Stephen Jones, and Robert Welch (hereinafter Massachusetts Partners). The principal object of that partnership was the operation of the Portland Regency Hotel (a/k/a Old Port Regency Hotel) (hereinafter Hotel) in Portland, Maine. On November 1, 1985, the Maine Partners and the Massachusetts Partners individually, as general partners, and as the Armory Hotel Associates, borrowed $8.2 million from Bank of New England, N.A. (hereinafter Appellee or Bank), and executed a promissory note memorializing that loan.[1] The loan was secured by, among other items, a mortgage on the Hotel. The amount of the principal debt was reduced to $6.2 million on October 30, 1987 when the Bank applied a $2 million letter of credit issued by Berkshire County Savings Bank to the outstanding debt. This action was commenced, some two and one-half years ago, to collect the outstanding balance of that debt.

### 1. *Cumberland County Superior Court*

Armory Hotel Associates failed to satisfy the conditions of the note and mortgage at some point in mid–1988. The Bank accelerated the note on August 10, 1988 and declared all sums associated with the loan to be due from Armory Hotel Associates, the Maine Partners, the Massachusetts Partners, and all other guarantors. On August 22, 1988, the Bank filed an Intervenor's Complaint in Cumberland County Superior Court seeking (1) a declaration that a breach of the mortgage had occurred; (2) a finding that the principal amount due the Bank under the note was $6.2 million plus interest, fees, and charges, and (3) foreclosure on the Hotel, along with any other appropriate relief. Intervenor's Complaint of Bank of New England (Volume I, No. 1(a)).[2] In addition, the Bank demanded a judgment against the Maine Partners and the Massachusetts Partners individually, and as general partners of Armory Hotel Associates, based on the partners' joint and several liability for the loan obligation and

---

1. Reference to "the Bank" in connection with this transaction should be read in this opinion to include any and all predecessors in interest to this loan.

2. All citations herein are to the record submitted to this Court on appeal and certified by the Clerk of the United States Bankruptcy Court, unless otherwise noted.

all attendant costs and fees. *Id.*[3] On September 2, 1987, before any meaningful action could be taken on the Bank's Complaint, Armory Hotel Associates became the subject of an involuntary bankruptcy petition.

Two months later, Appellants filed their Answer to the Bank's Complaint. Answer of Intervention/Defendants to First Amended Complaint of Bank of New England (Volume I, No. 1(d)) (hereinafter Answer). Appellants admitted to virtually every material element of the Bank's Complaint. Most important, Appellants admitted as follows:

—Appellants, as individuals and general partners of Armory Hotel Associates, borrowed $8.2 million from Bank. The outstanding balance was later reduced to $6.2 million by the application of the letter of credit. Answer at ¶ 10.

—Armory Hotel Associates breached the mortgage. Answer at ¶ 13.

—The outstanding principal amount of the debt obligation was $6.2 million. Answer at ¶ 15.

—The Maine Partners and the Massachusetts Partners executed individual guaranties on the loan obligation and were, therefore, jointly and severally liable for the full outstanding amount of the debt. Answer at ¶¶ 20, 21.

The Answer contained no counterclaims and no affirmative defenses.

The Bank moved in Superior Court on December 13, 1988 for summary judgment establishing joint and several liability in the amount of $7,156,644.32 for each of the Maine Partners and Massachusetts Partners, as well as the Armory Hotel Associates partnership. *See* Motion for Summary Judgment and Memorandum of Law in Support of Motion (Volume I, No. 1(e)). The stated sum represented the $6.2 million principal debt plus interests, fees, and late charges. *See* Affidavit of Donald F. Letty (Volume I, No. 1(f)). A hearing on the Bank's summary judgment motion was scheduled by the Superior Court for February 6, 1989.

It was at this point that a simple case to collect an uncontested debt obligation was mangled by Appellants' all-too-successful obfuscatory procedural maneuvering. Appellants' first tactic in response to the Bank's summary judgment motion was a demand for expansive discovery, beginning with the filing on January 13, 1989 of a notice to depose the Bank and its Vice-President, Michael Hullinger. *See* Brief of Appellants Eric L. Cianchette, Kenneth L. Cianchette, A. Earl Brown, and William T. Brown at Exhibit 4 (hereinafter Appellants' Brief). The deposition notice exposed Appellants' intention to explore a very broad range of issues beyond the scope of the lawsuit.[4] The Bank filed a Motion for a Protective Order in an effort to limit the range of issues raised in the deposition. Appellants, in turn, filed a Motion for Continuance of the summary judgment hearing and opposed the Motion for Protective Order. *See* Motion of Defendants for Continuance of Hearing on Motion for Summary Judgment of Bank of New England (Volume I, No. 1(g)); Memorandum of Law in Support of Motion of Defendants for Continuance (Volume I, No. 1(h)).

The Superior Court, after notice and hearing, ordered that the deposition of Mi-

---

**3.** Appellee filed Intervenor's First Amended Complaint on October 17, 1988. *See* Volume I, No. 1(c). The amendment is not relevant to this appeal.

**4.** The following issues were included in Appellants' deposition notice:

1. All loan transactions entered into by and between Bank of New England and/or Patriot Bank and Armory Hotel Associates;

2. All loan transactions entered into by and between Bank of New England and/or Patriot Bank and Iyanough Management Company;

3. All loan transactions entered into by and between Bank of New England and/or Patriot

Bank and Robert Welch, Stephen Jones and Allan Jones [the Massachusetts Partners] either individually or collectively;

4. All loan transactions entered into by and between Bank of New England and any partnerships in which Robert Welch, Alan Jones or Stephen Jones was or is a general partner;

5. All loan transactions entered into by and between Bank of New England and/or Patriot Bank and all corporations in which Robert Welch, Allan Jones and Stephen Jones, either individually or collectively, have or had an interest.

*Id.* at Exhibit 4.

chael Hullinger be held on February 1, 1989; however, the Superior Court limited Appellants' discovery as follows:

The Maine Partners may inquire with respect to the accrued interest, late charges, forbearance fees, attorneys' fees, collection costs and any other *non-principal amounts* the Bank claims it is owed. The Maine Partners may inquire into the Bank's relationship with the Massachusetts Partners and any partnerships and corporations in which any or all of the Massachusetts Partners have or had any interest, in order to determine whether and to what extent this relationship(s) may have affected the *amount of non-principal obligation* the Bank claims it is owed by the partnership and the Maine partners.

Order on Motion for Continuance at 2 (Volume I, No. 1(1)) (emphasis added). The Superior Court's order acknowledged *sub silentio* that the only issues upon which there might be a genuine dispute as to material facts were those involving interest, fees, late charges, and other alleged damages not including the outstanding principal amount of the debt, $6.2 million. Accordingly, discovery was limited to those relevant topics and all other discovery was prohibited.

Appellants filed their Objection to Bank of New England's· Motion for Summary Judgment on February 3, 1989 with an accompanying Memorandum of Law. *See* Volume I, No. 1(n), 1(o). Appellants' Memorandum of Law included the following admission:

Eric L. Cianchette, Kenneth L. Cianchette, William T. Brown, and A. Earl Brown *do not deny that Armory Hotel Associates is obligated to the Bank of New England in the amount of 6.2 Million [sic] dollars, the principal amount of the Note.* However, it is the position of the Defendants that the Bank is not entitled to the entire relief it requests for the following reasons. First, the penalty provisions contained in the Note ... are unenforceable. Secondly, the deferral fee agreement ... is unenforceable. Finally, foreclosure of the first priority interest of B.N.E. in the subject property

can be ordered, if at all, only after the existing uncertainty and confusion over the ownership of the furnishings, fixtures and equipment of the Portland Regency Hotel is resolved.

Memorandum of Law in Support of the Objection to Bank of New England's Motion for Summary Judgment at 2 (Volume I, No. 1(o)) (emphasis added). *See also* Affidavit of Eric L. Cianchette (Volume I, No. 1(p)) (discussing only these three subjects and including only documents relating to· these three subjects). To this point in the litigation, Appellants had not raised any issue of fact as to their liability for the debt obligation or the amount of their liability. Their twice-repeated admissions on those points remained unchanged.

On February 6, 1989, the Hotel was sold at public auction to BWL, Inc., a Maine corporation in which the Maine Partners are the only shareholders. BWL, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 9, 1989. On March 30, 1989, Appellants filed a Verified Application for Removal of the present action and all other related actions to the United States Bankruptcy Court. *See* Verified Application for Removal (Volume I, No. 1). As a result, the Bank's summary judgment motion remained unresolved four months after the filing of the motion, even though Appellants had neither pleaded nor offered any evidence that a disputed material fact existed as to their liability for the outstanding debt obligation or the amount of that liability.

### 2. *United States Bankruptcy Court*

The second phase of this litigation opened in the United States Bankruptcy Court on April 10, 1989 when the Bank filed its Response to Appellants' Petition for Removal. Included with the Response was a new Motion for Summary Judgment on the identical grounds as the motion submitted to the Superior Court. Bank of New England's Response to Petition for Removal, Motion for Abstention or, in the Alternative, Motion for Summary Judgment at 9–12 (Volume II, No. 2). The undisputed facts reported in the Bank's

Statement of Material Facts accurately repeated Appellants' admissions as to the amount and fact of liability. *See* Statement of Material Facts (Volume II, No. 3).

On April 27, 1989, Bankruptcy Judge James Goodman held a hearing to address the issues surrounding the removal petition, the Bank's summary judgment motion, and several related matters.[5] This hearing and the motion practice associated with the hearing were the first time during the course of this litigation that Appellants raised any questions about the amount of their liability, or the existence of any "offsets" to the amount claimed by the Bank. *See* Response and Objection of the Debtor and the Maine Partners at 7 (Volume II, No. 4); Debtor's and Maine Partners' Motion for Continuance at 2 (Volume II, No. 5).

Appellants' position in the Bankruptcy Court hearing, and in their various motions and memoranda associated with the hearing, was to concede liability, but to contest the amount of the liability on the grounds that some offsets might be available to them. In addition, Appellants complained that they had been denied sufficient discovery by the Superior Court to explore the issue of offsets and should, as a result, be granted sixty days for discovery by the Bankruptcy Court. The Bank's position was that the amount of the liability had been settled by the proceedings and discovery in the Superior Court, that Appellants had already conceded that the amount of the principal debt obligation is $6.2 million, and that no additional discovery was required. Transcript of Hearing on Motions at 12–31 (April 27, 1989). Judge Goodman resolved the dispute by granting sixty days for discovery to the parties, and permitting the parties to negotiate as to the amount of Appellants' liability after the discovery was completed. *Id.* at 30.

On June 27, 1989, Judge Goodman issued an interlocutory order, apparently produced by negotiations between the parties, which:

1. Entered partial summary judgment in favor of the Bank and against Appellants for "liability for an unliquidated sum to be determined in the course of further proceeding in this court."

2. Recorded the following agreement of the parties: "The parties agree that the principal amount of the said obligation is presently $6,200,000.00. The [Appellants] concede liability, but seek the opportunity to contest all amounts claimed to be owed by them."

3. Extended until July 28, 1989 the opportunity for all parties to complete discovery with regard to the amounts owed by Appellants. No restrictions were placed on discovery.

4. Preserved the Bank's right to contend that Appellants were estopped from raising any issues not previously raised in Superior Court.

Order, June 27, 1989 (Volume II, No. 6 & No. 7).[6] The Bankruptcy Court later extended the discovery deadline to October 15, 1989.

By the time this extended discovery period drew to a close, fourteen months had passed since the commencement of the Bank's suit against Appellants, eleven months had passed since the date of the Bank's original summary judgment motion, and six months had passed since the bringing of the Bank's summary judgment motion in the Bankruptcy Court. Still, no judgment on the undisputed questions of liability and the amount of liability had yet been rendered. On October 18, 1989, the Bank once again renewed its motion for summary judgment in the Bankruptcy Court on the same grounds as had been previously raised in the Superior Court and the Bankruptcy Court. Bank of New England's Renewed Motion for Final Summary Judgment (Volume II, No. 8).

---

**5.** Other issues and parties not relevant to this appeal were also addressed at that hearing.

**6.** The Bank had requested, apparently without objections other than those noted from Appellants, that the Court enter such an order to

permit the Bank to file copies of the order with registries in different counties in Maine in order to establish the Bank's lien on property of Appellants. Appellants' Brief at 8.

Appellants responded to the Bank's motion on November 1, 1989 with an objection/memorandum incorporating all of their previous arguments, and setting forth two "new objections" [7] to final judgment:

(i) "the Bank of New England's failure to exercise due care in the supervision of the $8,200,000 construction loan provided to Armory Hotel Associates to construct the hotel, and (ii) the Bank of New England's negligent entrustment of loan proceeds to Stephen Jones, Allen Jones and Robert Welch in violation of § 7(c) of the Construction Loan Agreement.

Maine Partners' Response and Objection (Volume II, No. 8). Appellants' objection was accompanied neither by a statement of material facts nor a memorandum of law.[8] The only submissions of evidentiary quality supporting Appellants' new objections were an affidavit from Eric Cianchette, and a copy of a Construction Loan Agreement. Affidavit of Eric L. Cianchette (Volume II, No. 8). On November 9, 1989, the date of the Bankruptcy Court's hearing on the Bank's renewed motion for summary judgment, Appellants moved to amend their pleadings to include the above described "new objections" as affirmative defenses to their admitted liability on the debt obligation. Motion to Amend Pleadings (Volume III, No. 11).

Judge Goodman issued his Findings of Fact and Conclusions of Law with respect to the motion for summary judgment on December 26, 1989. The findings and conclusions can be summarized as follows:

1. The Bankruptcy Court's interlocutory order of June 27, 1989 resolved all issues of liability on the debt obligation and determined the principal sum of that obligation to be $6.2 million.

2. The Bankruptcy Court's interlocutory order was intended to leave open an opportunity for the parties to present evidence only on the issue of the amount of the judgment.

3. Appellants failed to raise any objections to the amount claimed owing for non-legal professional fees, legal fees, and collection costs. The court granted judgment on the following accrued costs for these items: non-legal professional fees = $29,999.62; collection costs = $1,035.53; and legal fees = $88,035.84. Adding the $6.2 million principal obligation, the Bankruptcy Court granted final judgment as of November 9, 1989 of $6,319,070.99.

4. Appellants raised genuine issues of fact regarding the computations of amounts due the Bank for interest, forbearance fees, and late charges.

Findings of Fact and Conclusions of Law (Volume III, No. 16). Judge Goodman entered an order granting summary judgment to the Bank for a total judgment of $6,319,070.99 and setting a hearing date of February 8, 1990 to determine the sums owed for interest, forbearance fees and late charges. Order (Volume III, No. 15). On December 27, 1989, Judge Goodman summarily denied Appellants' motion to amend their pleadings. Denial of Motion (Volume III, No. 11).

On February 12, 1990, Judge Goodman issued a Final Judgment and Order that the accrued post-default interest through February 7, 1989 was $1,718,734.73 [9], and that interest was thereafter at the rate of $2,066.67 *per diem.* The Bank had previously withdrawn its claims for a deferral fee, late charges, and an increased post-default interest rate. The Bankruptcy Court granted final judgment to the Bank in the amount of $8,039,872.39 with continuing interest after February 9, 1990 at the stated rate.

---

7. This is the characterization used by Appellants in their memorandum.

8. The objection filed by Appellants incorporated all of the legal arguments included in earlier memoranda; however, absolutely no statutory authority or case law supporting their two new objections was included in the "Law and Argument" section of their objection/memorandum. *See id.* at 3–9. Similarly, no authority was cited in Appellants' Further Memorandum of Law with Respect to the Bank of New England's Renewed Motion for Summary Judgement (Volume III, No. 13).

9. The basic note rate of interest was the prime rate plus two percent as defined in the loan documents. Final Judgment and Order at 2 (Volume III, No. 19).

Thus, eighteen months after the filing of its Intervenor Complaint, fifteen months after its first summary judgment motion, and ten months after its second summary judgment motion, the Bank had finally secured judgment on an uncontested debt obligation. Appellants filed a Notice of Appeal with this Court on February 21, 1990. The sole issue submitted for appeal, as stated by Appellants, is: "Did the Bankruptcy Court err as to a matter of law by granting the Motion for Plaintiff Bank of New England, N.A., for summary judgment in the amount of Eight Million Thirty-nine Thousand Eight Hundred Seventy-two Dollars and Thirty-nine cents ($8,039,-872.39)?"

## II. SUMMARY JUDGMENT

■ Appellants were served with two summary judgment motions brought by Appellee in the Bankruptcy Court.[10] On neither occasion did Appellants file a statement of material facts as to which they contend there is a genuine issue for trial. Local Rule 19 could not be clearer on this point:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, supported by appropriate record citations, as to which it is contended that there exists a genuine issue to be tried.

Local Rule 19(b)(2).[11] Failure to file a statement of material facts constitutes a waiver of objections by Appellants to Appellee's Statement of Material Facts. Appellants' waiver of objections is effective, however, only to the extent that the Appellee's Statement of Material Facts is supported by appropriate record citations. *McDermott v. Lehman*, 594 F.Supp. 1315, 1321 (D.Me.1984). This outcome is consistent with Local Rule 19(b)(2), which establishes that

> [a]ll material facts set forth in the statement required to be served by the moving party, if supported by appropriate record citations, will be deemed to be admitted unless properly controverted by the statement required to be served upon the opposing party.

Local Rule 19(b)(2).·

■ The Court's inquiry does not end with Appellants' waiver. It is well established in this district that Federal Rule of Civil Procedure 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object in a manner consistent with Local Rule 19. *Gagne v. Carl Bauer Schraubenfabrick*, 595 F.Supp. 1081, 1084 (D.Me.1984). Thus, the facts set forth in Appellee's Statement of Material Facts will serve as the factual record for deciding this Motion.

Appellee's burden in the Bankruptcy Court was to demonstrate that no genuine issue of material fact remained, and that the uncontested facts are sufficient to "entitle the moving party to judgment as a matter of law." *McDermott*, 594 F.Supp. at 1321. *See also Gagne*, 595 F.Supp. at 1084. This Court must now review the

**10.** Appellee asks this Court to hold that Appellants waived any objection on the questions of the amount and fact of liability by failing to make a timely objection in the Superior Court on those issues in their memorandum of law in opposition to the summary judgment motion. Appellee cites Maine Rule of Civil Procedure 7(b)(3), which reads in pertinent part:

> A party opposing a motion shall file a memorandum in opposition to the motion not later than 7 days prior to the hearing on the motion, unless another period is fixed by order of court. A party failing to file a timely memorandum in opposition to the motion shall be deemed to have waived objections to the motion.

M.R.Civ.P. 7(b)(3).

The Court expresses no opinion as to whether this Maine procedural rule requires that an *admission* on a particular factual issue in a timely filed memorandum of law in opposition to a motion constitutes a waiver of future objections on that issue. The rule appears to address a failure by the nonmovant to file *any* memorandum. Since the Superior Court did not address this question of Maine civil procedure, this Court declines to offer its judgment when other grounds are available for its decision.

**11.** This Court's Local Rules also govern proceedings in the Bankruptcy Court, except in circumstances where the Local Rules conflict with the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court's own local rules. Bankruptcy Rule 9029.

Bankruptcy Court's holding that no genuine issue of material fact exists, and that Appellee was entitled to judgment as a matter of law.

The standard of review in an appeal from the Bankruptcy Court is also well established. This Court may not set aside the Bankruptcy Court's findings of fact unless those findings are clearly erroneous. Conclusions of law are subject to *de novo* review. *In re Martin*, 62 B.R. 943, 944 (D.Me.1986). *See also* Bankruptcy Rule 8013; 28 U.S.C. § 158. Summary judgment is a conclusion of law which is rendered if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Thus, this Court must undertake a *de novo* review of the Bankruptcy Court's order granting summary judgment to Appellee.

■ The Court need not linger long over the propriety of granting summary judgment in this case. The only material issues raised by the claims contained in Appellee's Intervenor Complaint, and relevant to this proceeding, are these: (1) whether there was a breach of the mortgage; (2) whether the principal amount due was $6.2 million; (3) what sums, if any, are due for interest, fees and charges; and (4) whether Appellants are guarantors of the mortgage, and therefore jointly and severally liable for the debt obligation. Appellants admitted in their Answer in Superior Court that (1) a breach had occurred; (2) the principal amount due was $6.2 million; and (3) Appellants had executed individual guaranties on the loan obligation and were, therefore, jointly and severally liable.

Appellants are bound by the admissions in their pleadings. *Meschino v. North American Drager, Inc.*, 841 F.2d 429, 435–36 (1st Cir.1988). Even if Appellants could identify *any* evidence in the record which contradicted these admissions, and clearly they cannot, the admissions would be binding on Appellants. *Action Manufacturing, Inc. v. Fairhaven Textile Corp.*, 790 F.2d 164, 165 (1st Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 188, 93 L.Ed.2d 122 (1986). As a result, there cannot be a genuine issue as to the fact that a breach occurred, that the principal amount of the debt is $6.2 million, and that Appellants are jointly and severally liable for that amount. The Bankruptcy Court was clearly correct in granting summary judgment to Appellee on these issues.

The remaining issue is the amount adjudged by the Bankruptcy Court to be owed by Appellants for post-default interest. In response to Judge Goodman's order scheduling a hearing to address the issues of interest, nonlegal professional fees, forbearance fees, and late charges, Appellants filed an objection which addressed only the propriety of the nonlegal professional fees, forbearance fees, and late charges. These claims were withdrawn by Appellee. Appellants never objected or submitted evidence on the question of post-default interest. As a result, no genuine issue of material fact was raised by Appellants as to post-default interest.

Appellee submitted evidence establishing the facts which were eventually found by the Bankruptcy Court; that is, $1,718,734.73 interest had accrued from the date of default through February 7, 1989. Accordingly, the Bankruptcy Court's grant of summary judgment on this issue, and its final judgment for Appellee in the amount of $8,039,872.39, were correct, as a matter of law, and will be affirmed by this Court.

### III. MOTION TO AMEND PLEADINGS

Appellants argue that an affidavit by Appellant Eric Cianchette, submitted with Appellants' objection to the motion for summary judgment, raises a genuine issue of material fact. *See* Maine Partners' Response and Objection (Volume II, No. 8). The affidavit contains averments supporting two purported affirmative defenses which Appellants sought to add to their Answer by means of a Motion to Amend Pleadings. The Bankruptcy Court denied

Appellants' Motion to Amend, thereby making the allegations in the affidavit moot.[12] The affidavit can be relevant to material facts in this litigation, therefore, only if the Bankruptcy Court erred when it denied Appellants' motion to amend their pleadings.

Appellants attempted to amend their pleadings on November 9, 1989 to include two purported affirmative defenses to their liability on the debt obligation: (1) "negligent entrustment" of loan proceeds; and (2) negligent supervision of the construction loan. Federal Rule of Civil Procedure 15(a) requires that leave to amend pleadings be "freely given when justice so requires." Fed.R.Civ.P. 15(a). While liberal, this policy does not amount to an unlimited right of amendment. Granting leave is a matter of the trial court's informed discretion. *Diotima Shipping Corp. v. Chase, Leavitt & Co.*, 102 F.R.D. 532, 534 (D.Me. 1984). The Supreme Court has set forth the criteria for exercising that discretion:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave should, as the rules require, be freely granted.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (quoted in *Diotima Shipping*, 102 F.R.D. at 534). Mere delay is not sufficient to justify denying a motion to amend; however, the movant bears the burden of showing some valid reason for his neglect and delay where a considerable amount of time has elapsed between the filing of the complaint and the motion to amend. *Hayes v. New England Millwork Distributors, Inc.*, 602 F.2d 15, 20 (1st Cir.1979). This is particularly so when the amendment would likely require additional discovery, thereby entailing even further delay. *Stepanischen v. Merchants*

*Despatch Transportation Corp.*, 722 F.2d 922, 933 (1st Cir.1983).

Appellants sought to amend their Answer fifteen months after the filing of Appellee's Intervenor Complaint in Superior Court, and thirteen months after Appellants filed their original Answer. Appellants' only explanation for this delay was that new facts had been unearthed during the discovery period which ostensibly ran from the end of April 1989 through October 1989. These facts were necessary, according to Appellants, to advance appropriately their new affirmative defenses. The Court views that assertion "with the incredulity of a man struck by lightning in a rainless desert." *Baker v. Grinnell Corp.*, 116 F.R.D. 504, 506 (D.Me.1987).

The only evidence provided by Appellants to the Bankruptcy Court after five months of unfettered discovery was an affidavit by one of the Appellants, Eric Cianchette, and the Construction Loan Agreement between Armory Hotel Associates and Appellee. Obviously, all this evidence was within Appellants' control from the very beginning of this litigation. Appellants have not identified any evidence in this record or elsewhere which was obtained through discovery and is relevant to these alleged affirmative defenses. Appellants have not satisfied their burden of justifying the lengthy delay in seeking leave to amend their Answer.

In an effort to mitigate this unexcused and inexcusable delay in seeking to amend their pleadings, Appellants allege that Appellee had notice of the alleged affirmative defenses throughout the discovery period. The record indicates, to the contrary, that Appellee did not have notice of the specific theories to be advanced by Appellants until November 1, 1989 when Appellants filed their objection to Appellee's renewed motion for summary judgment. Prior to that date, Appellants had stated only in very general terms that they "reserved the right" to claim offsets. A mere suggestion

---

**12.** There is no dispute that this affidavit is irrelevant to the material elements of Appellee's claim. *See* Maine Partners' Further Memorandum of Law at 5 (Volume III, No. 13) ("the 'facts' described in the Bank of New England's statement of material fact are not in issue in this matter").

that a defendant might claim some offsets using an undisclosed theory cannot constitute adequate notice. The delay was prejudicial to Appellee. *Cf. Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4 (1st Cir.1983) (even if based on the facts in the original complaint, an amendment can work prejudice by requiring a last minute change in trial strategy and tactics).

Further, substantial discovery would have been required had Appellants' motion been granted. Appellants' "defenses" are rooted in a body of facts not included in the existing record. An entirely new litigation would have been launched requiring explorations into questions of tort law bearing little relation to the facts establishing Appellants' liability. As a result, additional delay would have been added to an already lengthy litigation.

In addition, the Court cannot ignore the fact that Appellants' motion to amend their Answer was made on the day of the Bankruptcy Court's hearing to address Appellee's motion for summary judgment. The strong presumption in such circumstances is that the motion for leave to amend was improperly advanced to avoid an adverse summary judgment. Such illicit eleventh hour motions to amend must be denied. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 806 (1st Cir.1987); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 139 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). *See also Hayes*, 602 F.2d at 20.

Finally, and most important, Appellants' motion to amend was futile with respect to the summary judgment motion. Even had the Bankruptcy Court permitted Appellants to amend their pleadings, and taken all of the averments in the affidavit submitted by Appellants as true,[13] Appellee would still have been entitled to summary judgment. As already noted, Appellants concede that the averments in the affidavit have nothing to do with the question of their liability for the debt obligation or the amount of that obligation.[14] Instead, the averments were offered to prove that Appellee had committed potentially tortious acts. Appellee's liability for these alleged torts is irrelevant to Appellants' liability for the debt obligation, and the facts necessary to prove the latter are only incidentally related to the facts allegedly establishing the former.[15]

Appellants impliedly concede this point by defining these "defenses" as "offsets." An offset, or setoff, is

> a demand that the defendant has against the plaintiff arising out of a transaction extrinsic to the plaintiff's cause of action whereas a "recoupment" is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction.

*Inniss v. Methot Buick–Opel, Inc.*, 506 A.2d 212, 217 (Me.1986). An offset has nothing to do with the justice of a plaintiff's claim; rather, it is an assertion by the defendant that the plaintiff is entitled to lesser damages, or no damages, because the defendant has his own freestanding

---

**13.** The Court does not imply here that the averments, if true, are sufficient to generate a genuine issue as to any material fact in this case. The affidavit contains only the conclusory and unsupported allegations of Appellant Eric Cianchette. Many of these allegations are mere statements of legal conclusions without any evidentiary support. These statements would not be admissible at trial, and therefore may not be used to defeat summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). The Court holds that, as a matter of law, the evidence submitted by Appellants neither demonstrates nor establishes a genuine issue which must be tried.

**14.** *See supra* note 13. *See also* Reply Brief of Appellants at 5 ("In the original answer, the Maine Partners did admit that they were liable

as guarantors. There has never been any defense raised in this case concerning whether the Maine Partners were guarantors of the debt....")

**15.** Appellee asserts that the purported construction defects which would form the basis for any claim of negligent supervision were the subject of an arbitrator's decision on December 7, 1988, which was confirmed by the Superior Court on June 1, 1989, and the Maine Supreme Judicial Court. *See* Brief of Appellee Bank of New England at 9 (citing Appellants' Exhibit No. 15 at Exhibits G and H) (arbitrator's decision and Superior Court's decision and order). Because the Court will affirm the Bankruptcy Court's denial of Appellants' Motion to Amend Pleadings, any questions of collateral estoppel or *res judicata* are moot.

claim against plaintiff. *In re Johnson*, 552 F.2d 1072, 1078 (4th Cir.1977). For this reason, courts ordinarily define and treat offsets as counterclaims. *See, e.g., United States v. Gonzalez Medina*, 797 F.2d 1109, 1112–13 (1st Cir.1986) (distinguishing an "offset" of debts from a defense); *Middletown Plaza Associates v. Dora Dale of Middletown, Inc.*, 621 F.Supp. 1163, 1165 (D.Conn.1985) (and authorities cited therein); *In re Zerodec Megacorp, Inc.*, 60 B.R. 884, 886 (E.D.Pa.1985); *Curtis v. J.E. Caldwell & Co.*, 86 F.R.D. 454, 457–58 (E.D.Pa.1980). *See also* 2A *Moore's Federal Practice* at ¶¶ 8.27[3], 13.02 (setoff is a permissive counterclaim and should be pleaded as such).

The very best Appellants could have hoped for by the interposition of their "negligent entrustment" and negligent supervision counterclaims was a reduction in the damages owed to Appellee.[16] The Court believes, however, that Appellants mislabelled these alleged offsets in a self-serving effort to defeat summary judgment. A proposed amendment adding a counterclaim would very likely have been irrelevant, on its face, to Appellee's motion for summary judgment. Only a "defense" could have raised a genuine issue as to a fact material to Appellee's claim, thereby blocking the inevitable summary judgment on November 9, 1989. The Court's belief is consistent with the already strong presumption that Appellants' motion to amend their pleadings was offered on the day of the Bankruptcy Court's summary judgment hearing for the illicit purpose of defeating an adverse summary judgment.

In sum, every relevant factor gives strong support to the Bankruptcy Court's order denying Appellants' motion to amend their pleadings. Accordingly, the Bankruptcy Court's order denying Appellants' Motion to Amend will be affirmed.[17] As a result, the facts averred in the Cianchette affidavit were not and are not material to any fact relating to any claim, defense, or counterclaim properly raised in this litigation. Appellants failed to satisfy their burden of demonstrating the presence of a genuine issue of material fact. The Bankruptcy Court, therefore, properly granted summary judgment to Appellee.

## IV.  MISCELLANEOUS ARGUMENTS

Appellants raise two additional arguments attacking the Bankruptcy Court's grant of summary judgment to Appellee. Appellants' first argument is that the Bankruptcy Court erred when it interpreted its own interlocutory summary judgment order to preclude Appellants from raising arguments concerning their right of offset against the amount of the principal

---

**16.** Federal Rule of Civil Procedure 8(c) permits the relabelling of counterclaims mistakenly identified in pleadings as affirmative defenses. However, Appellants have provided no citation to any authority which establishes or explains the legal foundation for these "defenses." *See supra* note 8 (citing sections of Appellants' briefs which are silent as to legal authority for the propositions advanced). These prospective counterclaims may have no basis in law, thereby making the proposed amendment futile. Appellants have offered no argument which permits the Court to assess the validity of these allegations. The Court has made abundantly clear on numerous occasions that

> [t]he Court's docket is full and its time must be devoted to resolving issues properly joined before it. The Court will not, and in fairness to all the parties, cannot do the work of the litigants as well as its own.

*United Transportation Union v. Maine Central Railroad Company*, 107 F.R.D. 383, 383–84 (D.Me.1985). The Court of Appeals for the First Circuit observes a similar rule:

> It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.

*Collins v. Marina–Martinez*, 894 F.2d 474, 481 n. 9 (1st Cir.1990). Accordingly, the Bankruptcy Court was under no obligation to correct Appellants' mistaken labelling *sua sponte*, and grant leave to amend Appellants' answer to add counterclaims which may be unsupportable.

In addition, the Court's foregoing discussion of Appellants' undue delay and prejudice to Appellee applies equally well regardless of whether Appellants sought to add defenses or counterclaims.

**17.** Appellants did not expressly appeal the Bankruptcy Court's order denying their motion to amend pleadings. That order is, however, one basis upon which this Court will ultimately affirm the Bankruptcy Court's grant of summary judgment to Appellee. For that reason, the Court explicitly affirms the denial of Appellants' motion to amend.

debt obligation. Specifically, Appellants contend that "[t]he Interlocutory Judgement order was never intended to limit the Maine Partners' right to contest the principal amounts of the Bank of New England's claim." This argument is frivolous.

Appellants themselves negotiated and agreed to a provision in the interlocutory order which concedes liability for the principal amount of $6.2 million. This concession, coupled with several earlier admissions in Appellants' pleadings in Superior Court and memoranda in Bankruptcy Court, estopped Appellants from thereafter contesting either the amount or fact of liability. Appellants now demand nothing less than the unlimited right to recant admissions and reopen settled issues. Their argument reduces to the unsupported and unsupportable assertion that litigants may preserve an issue for some unknown future action by merely declaring the reservation of that issue. Given that Appellants have never properly placed the questions of liability or the amount thereof in issue by either the submission of evidence or the pleading of any relevant defense, this argument pushes itself across the border separating frivolity from absurdity.

Appellants' second argument is that they were improperly denied discovery in the Superior Court and, as a result, were unable to acquire information about their claimed "offsets." This argument is also frivolous. Appellants were given an abundant period of unrestricted discovery in the Bankruptcy Court. Even if Appellants had been prejudiced by the Superior Court's limitations on discovery,[18] the prejudice was thoroughly dissipated by five months of unlimited discovery granted by the Bankruptcy Court. The Court notes that Appellants have not identified any evidence which is necessary to support their allegations and which has been unavailable as a consequence of restricted discovery. The Court also noted that the only product of five months of Appellants' discovery was evidence which had been in Appellants' possession from the first day of this litigation. The only reasonable conclusion which can be drawn is that Appellants are advancing an argument which is unburdened by substance or validity.

## V. SANCTIONS

■ Appellee asks this Court to sanction Appellants, pursuant to Federal Rule of Appellate Procedure 38, for advancing a frivolous appeal. Federal Rule of Appellate Procedure 38 reads:

> If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

Fed.R.App.P. 38.[19] An appeal is frivolous either when the result is obvious or the arguments supporting the appeal are wholly without merit. *Natasha, Inc. v. Evita Marine Charters, Inc.,* 763 F.2d 468, 472 (1st Cir.1985). The Court need not find that the appeal was brought in bad faith. Rather, it is sufficient to establish that appellants and their attorneys should have known that the appeal had no chance of success; that is, "the appellant should have realized the weakness of his legal position." *E.H. Ashley & Co. v. Wells Fargo Alarm Services,* 907 F.2d 1274 (1st Cir. 1990).

Even in cases where the frivolity "may not be intuitively clear to one not familiar with the field," an appeal may be frivolous when a minimal amount of research would reveal the weakness of the appellant's argument. *Natasha, Inc.,* 763 F.2d at 472. Finally, Appellants need not have violated the law to be subject to sanctions. An appeal of right does not translate into the propriety of appeal. *Applewood Landscape & Nursery Co. v. Hollingsworth,*

---

**18.** The Court does not imply that the Superior Court improperly limited Appellants' discovery rights. The Court need not reach that issue.

**19.** This Court acts as an appeals court in reviewing orders from the Bankruptcy Court, and as such applies the Federal Rules of Appellate Procedure. *See* 28 U.S.C. § 158 (bankruptcy appeals in district courts "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...."). *See also In re Armorflite Precision, Inc.,* 48 B.R. 994, 996 (D.Me.1985) ("The Federal Rules of Appellate Procedure govern the taking of such appeals").

884 F.2d 1502, 1508 (1st Cir.1989) (quoting *Coghlan v. Starkey,* 852 F.2d 806, 809 (5th Cir.1988)). *See also Transnational Corp. v. Rodio & Ursillo, Ltd.,* 920 F.2d 1066, 1071–72 (1st Cir.1990) (appellant sanctioned because there were no legitimate grounds for pursuing appeal).

■ This appeal is based on Appellants' contention that they should be permitted to reopen settled issues, amend their pleadings to add mislabelled claims which are unsupported by evidence or legal authority, and allege new facts that are inconsistent with the uncontested record. This contention is made in spite of the fact that Appellants have admitted to all of the material facts relevant to this litigation, have had substantial opportunity to raise affirmative defenses or counterclaims, and have been provided with generous opportunities to conduct discovery. No attorney in the District of Maine with the facility to read the rules of this Court and the Federal Rules of Civil Procedure, and no party represented by an attorney with this facility, could reasonably advance this argument.

Stripped of the mountain of procedural maneuvering heaped on this litigation by Appellants, this is a simple case about an undisputed debt obligation. There has never been a serious question about any relevant fact. No issue of law has been seriously contested by Appellants, and many relevant issues of law were never even addressed. *Compare Applewood Landscape,* 884 F.2d at 1509 (and cases cited therein) (sanctions are appropriate even when there was a serious factual dispute in the lower court). There have been only distractions launched in service of what appears to be a conscious litigation strategy founded on delay.

For this appeal, Appellants have filed memoranda without citations to legal authority on dispositive issues, offered conclusory allegations without submitting evidence to support them, and argued issues not properly raised in this action. With the

exception of one paragraph in their appeal brief, Appellants have failed to offer any specific citations to any legal authorities.[20] Most important, even a cursory consideration of Appellants' arguments on appeal would expose the lack of any merit to these arguments. Simply, Appellants have offered nothing to this Court which suggests that there is any legitimate basis for reversing the Bankruptcy Court's order in any respect.

The Court has undertaken a detailed and careful consideration of this record to avoid inappropriately sanctioning Appellants and their counsel for advancing arguments which might find some support. The Court concludes from its review that Appellants and counsel have, without any justification, hijacked the time and resources of this Court. Further, Appellants have withheld from Appellee the sums associated with the debt obligation in question while forcing Appellee to suffer the expense and frustration of a two-and-one-half-year-long litigation. In addition, attorneys are not justified in spinning out essentially frivolous appeals for the sake of delay. *Good Hope Refineries, Inc. v. Brashear,* 588 F.2d 846, 848 (1st Cir.1978). Penalties are appropriate in cases where counsel have taken up the Court's time with frivolous appeals. *Natasha, Inc.,* 763 F.2d at 472.

Accordingly, Appellants and their counsel will be sanctioned in the amount of double Appellee's costs associated with this appeal. In addition, Appellants and their counsel will reimburse Appellee as "just damages," pursuant to Federal Rule of Appellate Procedure 38, for all expenses and fees incurred in connection with defending this appeal and all proceedings necessary to this appeal. Appellee's counsel will prepare and file with this Court, within ten (10) days from the date of this Memorandum and Order, a detailed itemization of all expenses incurred with respect to this appeal. This itemization will include a listing of all billable time and expenses related to

---

**20.** The Court notes that every citation in that paragraph, with the exception of a single citation to Supreme Court authority, refers the Court only to *persuasive* authority. As even a brief review of this opinion demonstrates, there is substantial authority in this district and the First Circuit on issues relevant to this appeal.

the efforts of Appellee's counsel in this appeal. The itemization will reflect the dates and times at which each itemized charge or expense was incurred and include a concise description of the function served by each itemized expense. The itemization will also contain a description of the function that counsel served in relation to each itemized charge, together with an indication of the hourly rate at which each item was charged. The billing shall also reflect the total billable hours for which Appellee seeks reimbursement as well as the total amount of reimbursement sought. Appellee's itemization will also reflect the normal hourly rate charged by each of Appellee's counsel involved in this appeal.

Counsel for Appellants will respond to Appellee's submissions by memorandum within seven (7) days from the date upon which Appellee's submission is filed. The memorandum must detail each objection to Appellants' claim for fees and expenses and each item therein which is the subject of an objection. Appellants' memorandum will not exceed ten (10) pages in length without prior consent of the Court. The Court will settle the amount of reimbursement in the event counsel cannot agree thereon.

### ORDER

The Final Order and Judgment of the Bankruptcy Court, and all interlocutory orders necessary to and/or incorporated therein, are hereby AFFIRMED.

Appellee's Motion for Sanctions is hereby GRANTED against Appellants and their counsel, and Appellants and their counsel are hereby ORDERED to pay to Appellee a sum totalling double the costs taxed by the Clerk of this Court and associated with this appeal. Liability for this sanction is joint and several among and between Appellants and their counsel.

It is further ORDERED that:

(1) Appellee will prepare and submit the itemized listing described herein for determination of Appellee's reasonable attorney's fees and expenses associated with the defense of this appeal within ten (10) days from the date of this Memorandum and Order; and

(2) Appellants will file a response to Appellee's itemized listing within seven (7) days from the date of the filing of the listing.

The Court RETAINS jurisdiction.

So ORDERED.